UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. |
| | : | |
| | : | **CLASS ACTION** |
| Plaintiff, | : | |
| | : | COMPLAINT FOR BREACH OF |
| | : | CONTRACT, UNJUST ENRICHMENT, |
| vs. | : | CONVERSION, BREACH OF TRUST, |
| | : | EQUITABLE ACCOUNTING, AND FOR |
| WELLS FARGO BANK, N.A., as Trustee, | : | DECLARATORY AND INJUNCTIVE |
| | : | RELIEF |
| Defendant. | : | |
| | : | |
| | x | **DEMAND FOR JURY TRIAL** |

Plaintiff Royal Park Investments SA/NV ("plaintiff" or "RPI") alleges the following on information and belief based upon the investigation of plaintiff's counsel (except as to the allegations pertaining to plaintiff, which are based on personal knowledge), which included an investigation and review of information concerning defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "defendant"), a review and analysis of information concerning the Covered Trusts (as defined below) and the documents governing Wells Fargo's duties and rights ("Governing Agreements") at issue herein.  Plaintiff and plaintiff's counsel believe that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.    Plaintiff brings this action on its own behalf and on behalf of a class of residential mortgage-backed securities ("RMBS") investors in the following two substantially similar RMBS trusts for which defendant Wells Fargo serves as trustee (collectively, the "Covered Trusts"):

| Covered Trust Name | Hereinafter Referred to As |
|---|---|
| 1. Asset Backed Funding Corporation Trust 2006-OPT1 | ABFC 2006-OPT1 |
| 2. Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC1 | SASC 2007-BC1 |

2.    This dispute arises from another litigation in this District between RPI and Wells Fargo, *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*, No. 1:14-cv-09764-KPF-SN (S.D.N.Y.) (the "Litigation"), pending before the Honorable Katherine P. Failla.[1]  In the Litigation, Wells Fargo has been reimbursing its legal fees and costs incurred in its defense directly from the Covered Trusts.  As a result, Wells Fargo's legal expenses related to defending itself in the Litigation against allegations that it breached its contractual and common law duties owed to

---

[1]    The Litigation is part of a coordinated action referred to as *Coordinated RMBS Trustee Actions Against Wells Fargo Bank, N.A.*, Nos. 14-cv-09371, 14-cv-09764, 14-cv-10067, 14-cv-10102, 15-cv-10033 (S.D.N.Y.).

investors are currently being paid by funds out of the Covered Trusts' assets that belong to the investors in those trusts.

3.     Under both the Governing Agreements and the common law of trusts, Wells Fargo is not permitted to receive advancement, reimbursement, or indemnification for the legal fees and costs it incurs in relation to the Litigation.  Rather, Wells Fargo is improperly and illegally financing its defense of the Litigation with funds from the very investors that have accused Wells Fargo of wrongdoing.  Thus, the investors are being harmed by Wells Fargo twice – first through Wells Fargo's misconduct as alleged in the Litigation, and second through Wells Fargo's improper and illegal use of those same damaged investors' funds to defend itself for its misconduct.

4.     Because Wells Fargo is improperly and illegally using Covered Trust funds to defend itself in the Litigation, Wells Fargo must pay back to plaintiff and the class immediately all funds it has wrongfully taken.  In addition, plaintiff and the class request that Wells Fargo be enjoined from improperly taking such funds.

## JURISDICTION AND VENUE

5.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a).  The amount at controversy is significantly higher than $75,000.

6.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b).  Indeed, in the Pooling and Servicing Agreement ("PSA") for ABFC 2006-OPT1, Wells Fargo specifically consented to litigating claims in this District.  *See* Ex. A, ABFC 2006-OPT1 PSA §11.04.

## PARTIES

7.     Plaintiff RPI is a limited liability company incorporated under the laws of Belgium, with its principal place of business in Brussels, Belgium.  RPI acquired RMBS in each of the

Covered Trusts on or about the dates indicated below, and has continuously held such RMBS since then:

| Covered Trusts | Tranche/Class | Initial Face Amount of Certificate | Date Acquired |
|---|---|---|---|
| ABFC 2006-OPT1 | M4 | $5,000,000 | February 12, 2010 |
| SASC 2007-BC1 | M6 | $1,136,000 | February 12, 2010 |

8.      Defendant Wells Fargo is a national association with its main office in South Dakota and its principal place of business in California.  Wells Fargo provides RMBS trustee services, and it serves as trustee for hundreds of RMBS trusts formed under the law of the State of New York, including the Covered Trusts.  Wells Fargo has served as the trustee for the Covered Trusts since they were formed in 2006 and 2007.

## FACTUAL ALLEGATIONS

9.      RPI is the plaintiff in the Litigation currently proceeding against Wells Fargo.  In that case, RPI alleges that Wells Fargo failed to fulfill its duties as trustee of the Covered Trusts and thereby damaged RPI and the class of RMBS certificateholders.  The operative complaint in the Litigation (the "Complaint") is found at Dkt. No. 24 of the Litigation and incorporated by reference herein.[2]

10.      In the Complaint, RPI alleges breach of contract and breach of trust causes of action against Wells Fargo.  RPI alleges that, although required by the Governing Agreements and its duty as trustee, Wells Fargo willfully ignored and failed to effectuate the repurchase of mortgage loans in the Covered Trusts that had breached the representations and warranties from the originators, warrantors and/or sellers ("Warrantors"), despite receiving extensive notification of and possessing actual knowledge of specific breaches, and possessing knowledge from numerous sources of

---

[2]      All paragraph references ("¶__" or "¶¶__") are to the Complaint filed in the Litigation.

pervasive substandard underwriting and outright fraud in the origination of those loans. Wells Fargo took virtually no action to protect the investors because its primary concern was preserving its lucrative business interests with the deal parties responsible for making the repurchases.

11.     In addition, RPI alleges Wells Fargo discovered and knew of loan servicer events of default ("Events of Default") committed by the loan Servicers or Master Servicers (collectively "Servicers") under the Governing Agreements, but failed to give notice and cure those Events of Default. Wells Fargo also willfully failed to discharge its fiduciary duty to protect the interests of the certificateholders following the Events of Default, once again, electing to place its conflicted financial self-interest ahead of the interests of certificateholders.

12.     The Complaint expressly and repeatedly alleges that Wells Fargo acted negligently and engaged in willful misconduct. *See* ¶¶113, 144, 146, 148, 150, 152, 160, 170, 172.

13.     For example, the Complaint references lawsuits regarding specific loans in the specific Covered Trusts that informed Wells Fargo that there were numerous defective mortgage loans in the Covered Trusts that breached the Warrantors' representations and warranties. ¶95. Moreover, Wells Fargo had granular visibility into the breaches of representations and warranties, such as misstated income or debt ratios, learned through the bankruptcies of the mortgage loan borrowers and through the due diligence of its own affiliates. ¶¶98-103.

14.     Wells Fargo discovered rampant failures by the Servicers to service the loans in conformance with the customary and usual standards of loan servicing practice, which constituted numerous Events of Default under the Governing Agreements. For example, in July 2011, a New Hampshire court stayed the foreclosure of a Mortgage Loan in the ABFC 2006-OPT1 Covered Trust because of dubious and obviously fraudulent assignment documents that were submitted by Wells Fargo and/or Covered Trust Servicer AHM Servicing. ¶114. In addition, the Servicers botched

1298214_1

numerous foreclosure actions due to gross errors, blatant misrepresentations or criminal conduct. Courts noted that Wells Fargo was even acquiescing in or actively participating in this misconduct; yet Wells Fargo did not take action to protect the certificateholders as it was required to do under the prudent-person standard, a duty of care akin to that of a fiduciary.  ¶115.

15.     In defending itself against the Litigation, Wells Fargo has and continues to spend an enormous amount on legal expenses, which has been paid from the assets of the Covered Trusts – the investors' money.  As of the filing of this complaint, it has filed an unsuccessful motion to dismiss the Litigation Complaint, commissioned three separate expert reports in support of its class certification opposition, engaged in a "scorched earth" defense strategy that included the filing of a rare and unwarranted *Daubert* motion at the class certification stage, and engaged in other unmeritorious discovery practice.  It has undertaken wholly irrelevant and wasteful discovery, including harassing plaintiff with 89 individual requests for production, many of which are irrelevant or duplicative, serving approximately 12 non-party subpoenas, and taking irrelevant or duplicative depositions, again using the investors' money.

16.     Wells Fargo and its counsel have consistently incurred unreasonable expenses in defending itself in the Litigation by using scorched earth tactics.  For example, the court struck Wells Fargo's motion to compel compliance with document and deposition subpoenas it issued to non-party Amherst Advisory & Management LLC, holding that the discovery sought was irrelevant and that the subpoenas were "unduly broad, vague, and burdensome." Dkt. No. 265.[3]  Furthermore, it has insisted on taking depositions of witnesses with little or no knowledge of information relevant to the Litigation.  Wells Fargo has also conducted inappropriately oppressive discovery, such that the

---

[3]     Docket numbers are to the Litigation unless otherwise indicated.

court granted RPI's motion to quash its Rule 30 deposition notices of two former employees and one of its two notices of deposition of current Board of Director members.  Dkt. No. 235.

17.     Despite the excessive legal expenses racked up in the Litigation, Wells Fargo has not paid or advanced **any** of its own legal costs and attorney fees, nor has it sought to control its litigation expenses.  One might wonder why a litigant would engage in such excessive, expensive and unnecessary litigation tactics.  During the course of discovery in the Litigation, the reason became clear – in early 2017, RPI became aware that Wells Fargo may have been billing the costs of defending the Litigation.  On June 2, 2017, RPI, through coordinated plaintiff BlackRock, moved to compel Wells Fargo to "produce documents concerning any efforts to bill the Trusts for legal costs and expenses incurred by Wells Fargo." *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, No. 1:14-cv-09371-KPF-SN ("*BlackRock*"), Dkt. No. 467 at 4-5 (S.D.N.Y. June 2, 2017).  Rather than condemning the practice, Wells Fargo has instead defended a trustee's ability to recoup such extraordinary expenses.  *BlackRock*, Dkt. No. 463 at 3-4 & n.2 (S.D.N.Y. May 30, 2017).  As a result, the Covered Trusts, and by way of the beneficial ownership structure of the RMBS in the Covered Trusts, RPI and the class have been improperly and illegally paying for Wells Fargo's defense in the Litigation, even though Wells Fargo's negligence, willful conduct and bad faith as alleged (and being proven through discovery) in failing to perform its mandated duties for investors is the cause of the Litigation.  Perversely, the investors were damaged by Wells Fargo's wrongdoing in the Litigation and now Wells Fargo is defending such wrongdoing with the funds of the investors it wronged.

18.     Because the certificateholders are the sole beneficiaries of the Covered Trusts, Wells Fargo's improper use of the Covered Trusts' funds reduces the amount of money that the certificateholders are entitled to receive as part of their beneficial ownership of the certificates.

- 6 -

Certificateholders have a beneficial interest in the interest and principal payments derived from the mortgage loans that serve as the corpus for each Covered Trust. However, before the certificateholders receive their monthly remittances, the trustee (and certain other deal parties) to the Governing Agreements may withdraw funds from the Covered Trusts' assets to pay for their costs administering the trust or servicing the loans.

19. While the certificateholders are not parties to the Governing Agreements, the Governing Agreements require Wells Fargo to administer the Covered Trusts for the sole benefit of the certificateholders. *See* Ex. A, ABFC 2006-OPT1 PSA §2.02; Ex. B, SASC 2007-BC1 Trust Agreement ("TA") §2.01(a). Thus, as the only intended beneficiaries of the Covered Trusts, they are directly damaged whenever assets or funds are wrongly siphoned from the Covered Trusts' assets. Accordingly, it is the certificateholders themselves that are funding the defense of their adversary, Wells Fargo, the party that wronged them, in the Litigation.

**The Governing Agreements**

20. The obligations, duties and rights of Wells Fargo as trustee for the Covered Trusts are expressly delineated in the Covered Trusts' Governing Agreements, known as "Pooling and Servicing Agreements" ("PSAs") or "Trust Agreements" ("TAs") and documents related thereto. The Governing Agreements for both Covered Trusts are attached hereto as Exhibits A and B respectively.

21. Each Governing Agreement is governed by New York state law. *See* Ex. A, ABFC 2006-OPT1 PSA §11.04; Ex. B, SASC 2007-BC1 TA §11.06.

22. The purpose of having trustees, such as Wells Fargo, for the Covered Trusts is to ensure that there is at least one independent party to the Governing Agreements that – unlike plaintiff and the class – does not face collective action, informational or other limitations, thereby

allowing and requiring the trustee to protect the interests of plaintiff and the class, and administer the Covered Trusts for their benefit.

23.     The corpus of the Covered Trusts, or the "Trust Fund," contains all the assets of the trust, including the mortgage loans and the mortgage loan interest and principal payments prior to remittance to the certificateholders.  Prior to remittance, parties to the Governing Agreements, such as the trustee or the servicer, can take specific permitted withdrawals from the Trust Fund prior to the funds being sent to certificateholders.   These permitted withdrawals are outlined in the Governing Agreements.  One such permitted withdrawal is the trustee fee Wells Fargo is paid for its services as trustee.  Wells Fargo can also incur extraordinary expenses for certain activities it undertakes for the benefit of the Covered Trusts that fall outside of the regular duties contemplated by the Governing Agreements.  Examples of expenses that Wells Fargo bills as extraordinary expenses are the costs incurred as a result of steps taken to protect the certificateholders' interests. The Governing Agreements do not give Wells Fargo unfettered discretion to use trust assets carte blanche for any purpose it sees fit.

24.     While the PSAs contain a number of provisions governing the indemnification of legal fees and costs related to the discharge of Wells Fargo's mandated duties under the Governing Agreements, there are some significant restrictions of Wells Fargo's ability to use Covered Trust funds.  Absent from these provisions is any unequivocal language explicitly indemnifying lawsuits between indemnitor and indemnitee, parties to the Governing Agreements or beneficiaries themselves to be enforced under New York contract law, as required to be applied by the PSAs.  For purposes of the Litigation, the certificateholders suing the trustee operate functionally similar to a first-party lawsuit as it pertains to indemnification provisions.  Accordingly, in the Litigation, the purported indemnitor is suing the indemnitee and indemnification is prohibited by New York law.

- 8 -

25.     Most relevant to the Litigation and this action is §8.05 of the ABFC 2006-OPT1 PSA, which prohibits trustee Wells Fargo from using funds from the Covered Trusts whenever Wells Fargo's conduct "may arise from its negligence or bad faith."  Ex. A, ABFC 2006-OPT1 PSA §8.05. In the TA for SASC 2007-BC1, the analogous provision is §6.12 (prohibiting reimbursement of fees and expenses for conduct "aris[ing] from its negligence, bad faith or willful misconduct").  Ex. B, SASC 2007-BC1 TA §6.12.

26.     Notwithstanding the fact that the Governing Agreements expressly and explicitly prohibit Wells Fargo from using the plaintiff investors' trust assets whenever Wells Fargo engages in negligence or bad faith, as is alleged and being confirmed through discovery in the Litigation, Wells Fargo has incredibly and in violation of the Governing Agreements used investors' trust assets to finance its defense against those investors in the Litigation.  In short, Wells Fargo is improperly and illegally using the very investors' money it has previously abused – by intentionally and in bad faith failing to discharge its duties under the Governing Agreements as set forth in the Litigation – to now damage those investors a second time by using investors' funds to defend itself against its own willful misconduct, bad faith and negligence inflicted upon the same investors.  Wells Fargo's actions are improper, inequitable and in violation of the Governing Agreements.

27.     In the Litigation, RPI alleged that "Wells Fargo's failures to act, and its breaches and violations alleged herein, were ***grossly negligent and willful misconduct***."  ¶144; *see also* ¶¶146, 148, 150, 152, 160, 170, 172.  Indeed, the Governing Agreements provide that "[n]o provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct."  *See, e.g.*, Ex. B, SASC 2007-BC1 TA §6.01(c).

1298214_1

28.     In addition, under New York law, it is well settled that parties are responsible for their own legal fees and expenses.  Therefore, where, as in the Litigation, the dispute is between or among parties to an agreement, indemnification for legal fees and expenses is not prohibited unless expressly stated in the contract.  The Governing Agreements do not authorize indemnification for legal expenses or costs in internecine disputes between the parties to the Governing Agreements, including the Litigation.

29.     Wells Fargo has asserted that the Governing Agreements entitle it to indemnification, as a general matter, from certificateholders.  However, where Wells Fargo is taking Covered Trust funds to defend itself against allegations that it willfully, negligently and/or in bad faith failed to perform the duties mandated by the Governing Agreements, the Governing Agreements expressly forbid Wells Fargo's financing of its defense with Covered Trust funds.  *See, e.g.*, Ex. A, ABFC 2006-OPT1 PSA §8.05.

30.     Moreover, the Governing Agreements do not contain provisions providing for an advancement of Wells Fargo's legal fees and costs.  Wells Fargo may only receive indemnification and subsequent reimbursement of those fees and costs which are permitted, and only if it can establish that the fees and costs are expressly permitted – which here, they are not.  *See* Ex. A, ABFC 2006-OPT1 PSA §8.05.

31.     Given that the Governing Agreements: (a) do not allow Wells Fargo to seek advancement or indemnification from the Covered Trusts for legal expenses incurred due to the conduct alleged in the Litigation; (b) prohibit indemnification for expenses incurred as a result of its bad faith and negligent or willful misconduct; and (c) limit indemnification to only reasonable expenses, the Governing Agreements do not permit advancement or indemnification for any or all of the legal fees and costs incurred in relation to the Litigation.

- 10 -

32.     Furthermore, because the Governing Agreements do not provide for its indemnification in these circumstances, under trust law, Wells Fargo is not permitted to seek indemnification for expenses not incurred for the benefit of the Covered Trusts.  As the benefit provided by the legal fees and costs incurred in the Litigation only benefits Wells Fargo, none of its expenses can be billed to the Covered Trusts.

33.     Just as Wells Fargo's indemnification for any costs associated with the Litigation is improper, so would its costs in defending this action be improper.  This action is another lawsuit for which the Governing Agreements do not unequivocally provide for indemnification of Wells Fargo's costs or expenses, and Wells Fargo will thus be willfully or negligently billing the Covered Trusts for the costs of defending its conduct.  Just as in the Litigation, this lawsuit arises from Wells Fargo's willful misconduct, bad faith or negligence in the performance of duties under the Governing Agreements.  Therefore, any indemnification that Wells Fargo seeks from the Covered Trusts for defending this action is unlawful and should be paid back to the Covered Trusts.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action on behalf of a class consisting of all current and former investors who held RMBS certificates in the Covered Trusts during the time when Wells Fargo improperly paid for its legal fees and costs in the Litigation from the Covered Trusts' assets and were damaged as a result (the "class").  Excluded from the class are Wells Fargo, the loan originators, the Warrantors, the Master Servicers and the Servicers of the Covered Trusts, and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.

35.     The members of the class are so numerous that joinder of all members is impracticable.  While the exact number of class members is unknown to plaintiff at this time and can

only be ascertained though appropriate discovery, plaintiff believes that there are at least hundreds of members of the proposed class.  Record owners and other members of the class may be identified from records maintained by Wells Fargo, Depository Trust Company or others, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the class, as they all acquired RMBS certificates in the Covered Trusts and held the RMBS certificates during the time when Wells Fargo began impermissibly billing the Covered Trusts for its Litigation fees and costs; Wells Fargo's alleged misconduct was substantially the same with respect to all class members; and all class members suffered similar harm as a result. Thus, all members of the class are similarly affected by Wells Fargo's contractual breaches and common law violations that are alleged herein.

37.    Plaintiff will fairly and adequately protect the interests of the members of the class and has retained counsel competent and experienced in class action and RMBS litigation.

38.    Wells Fargo has acted in a manner that applies generally to the class because each class member is impacted through any improper charge to the Covered Trusts' assets.  Accordingly, declaratory or injunctive relief will apply to the class as a whole.

39.    Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.  Among the questions of law and fact common to the class are:

(a)    whether Wells Fargo is contractually permitted under the Governing Agreements to receive indemnification of any of its legal fees and costs from the Covered Trusts incurred in relation to the Litigation;

(b)      whether Wells Fargo must seek indemnification from the Warrantors and/or Servicers for legal fees and costs incurred in relation to the Litigation;

(c)      whether Wells Fargo is permitted to obtain indemnification of legal fees and costs incurred in relation to the Litigation because of willful misconduct, bad faith or negligence in the performance of any of its duties;

(d)      whether Wells Fargo's legal fees and costs incurred in relation to the Litigation were unreasonable;

(e)      whether Wells Fargo, as trustee, was permitted to bill the Covered Trusts for the Litigation expenses as a principle of trust law;

(f)      whether Wells Fargo's conduct in obtaining its legal fees and costs out of the Covered Trusts' assets is tortious or inequitable; and

(g)      whether Wells Fargo is entitled to the advancement of its legal fees and costs incurred in relation to the Litigation.

40.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### Breach of Contract

41.      Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

42.      As set forth in detail above, the Governing Agreements are contracts setting forth the duties Wells Fargo owed to plaintiff, the class and the Covered Trusts, along with the conditions and limitations governing its rights to indemnification or use of Covered Trust funds.  Wells Fargo took

- 13 -

actions not permitted by the Governing Agreements or by New York law, including, without limitation:

(a)     using Covered Trust funds for legal fees and costs Wells Fargo incurred in defending the Litigation because the Governing Agreements and New York law do not permit indemnification of first-party claims or those between indemnitor and indemnitee;

(b)     using Covered Trust funds for legal fees and costs incurred in defending against allegations of negligence, bad faith and willful misconduct in the Litigation because the Governing Agreements and New York law prohibit the use of Covered Trust funds for such purposes;

(c)     using Covered Trust funds for unreasonable legal fees and costs incurred in defending itself in the Litigation; and

(d)     obtaining advancement of its legal fees and costs from the Covered Trusts incurred in relation to the Litigation.

43.     As alleged herein, Wells Fargo took actions not permitted by the Governing Agreements and therefore breached the Governing Agreements. Wells Fargo's contractual breaches deprived plaintiff, the class and the Covered Trusts of the consideration they bargained for, *i.e.*, they did not obtain RMBS certificates with a trustee that complied with its obligations under the Governing Agreements and could be relied on to properly bill its legal expenses. These breaches of the Governing Agreements by Wells Fargo caused plaintiff, the class and the Covered Trusts to suffer damages caused by the improperly billed legal expenses.

44.     Plaintiff and the class did not receive the benefit of their bargain under the Governing Agreements when Wells Fargo took actions that resulted in the payment of legal fees and costs from

the Covered Trusts incurred in defending against allegations of bad faith and willful or negligent misconduct.

45.     Furthermore, plaintiff and the class did not receive the benefit of their bargain under the Governing Agreements when Wells Fargo took actions that resulted in it receiving an advancement of legal fees and costs from the Covered Trusts incurred in relation to the Litigation.

46.     Finally, plaintiff and the class did not receive the benefit of their bargain under the Governing Agreements when Wells Fargo billed unreasonable legal fees and costs to the Covered Trusts.

47.     As a result of Wells Fargo's multiple breaches of the Governing Agreements alleged herein, Wells Fargo is liable to plaintiff, the class and the Covered Trusts for the damages they suffered as a direct result of Wells Fargo's actions alleged herein in contravention of the Governing Agreements.

48.     In addition, Wells Fargo has engaged in multiple, new and additional breaches of the Governing Agreements by continuing to take further actions as alleged herein, in both the Litigation and this action, and will cause plaintiff, the class and the Covered Trusts to suffer additional damages.

## COUNT II

### Unjust Enrichment

49.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

50.     Wells Fargo has received a specific benefit from its use of the Covered Trust funds for legal fees and costs at the expense of plaintiff and the class.

51.     As trustee, Wells Fargo had a fiduciary relationship to plaintiff, the class and the Covered Trusts, and Wells Fargo was aware of that relationship.

52.     In light of the egregious use of Covered Trust funds to finance the defense of the Litigation, restitution is necessary because equity and good conscience cannot permit Wells Fargo to retain the legal fees and costs.

## COUNT III

### Conversion

53.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54.     As described above, Wells Fargo's administration of the Covered Trusts and the funds therein must only be for the benefit of the certificateholders unless provided for by the Governing Agreements.

55.     By using Covered Trust funds for unlawful and unreasonable legal fees and costs, Wells Fargo has wrongfully converted Covered Trust funds belonging to plaintiff and the class.

56.     As a direct and proximate result of Wells Fargo's wrongful taking and interference of Trust Funds, plaintiff and the class have sustained damages and losses equal to the specific and identifiable amount of legal fees and costs misappropriated by Wells Fargo.

57.     At no point did plaintiff or class members consent to Wells Fargo's use of Covered Trust funds for defending itself in the Litigation.

58.     Wells Fargo's conduct was gross, willful and wanton, and at the least was undertaken with reckless disregard of plaintiff's rights, and therefore warrants the imposition of punitive damages.

## COUNT IV

### Breach of Trust

59.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60.     Under the common law, Wells Fargo had a duty to plaintiff and the class to only seek indemnification of permitted legal fees and costs incurred for the benefit of the Covered Trusts.

61.     As a result of Wells Fargo's actions in relation to allegations in the Litigation, Wells Fargo is not entitled to indemnity.

62.     Wells Fargo breached its duty of trust owed to plaintiff and the class by advancing its own interests at the expense of plaintiff and the class, because it is being sued in the Litigation in its capacity as trustee for failing to protect the interests of plaintiff and the class but billing the Covered Trusts for its defense.  Accordingly, the legal fees and expenses incurred in defending itself in the Litigation are for the exclusive benefit of Wells Fargo and not for the benefit of the Covered Trusts.

63.     In addition, Wells Fargo breached its duty of trust owed to plaintiff and the class by seeking unreasonable legal fees and expenses from the Covered Trusts assets.

64.     Furthermore, Wells Fargo has continued bill the Covered Trusts as alleged above and thus has continued to fail to fulfill its duty of trust, and has thereby engaged in numerous, continuing additional breaches of its duty of trust to the present time, in both the Litigation and this action.

65.     As a result of Wells Fargo's breach of its duty of trust, unpermitted legal fees and costs were billed to and paid from the Covered Trusts assets, causing the plaintiff and class damages.

66.     Wells Fargo's conduct was gross, willful and wanton, and at the least was undertaken with reckless disregard of plaintiff's rights, and therefore warrants the imposition of punitive damages.

## COUNT V

### Equitable Accounting

67.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

68.     As an RMBS trustee, Wells Fargo had, and continues to have, a fiduciary relationship with and duty to certificateholders regarding the assets of the Covered Trusts in which certificateholders have a beneficial interest.

69.     The funds held in the Covered Trusts are entrusted to Wells Fargo's administration and oversight.

70.     Wells Fargo's fiduciary duty and control of entrusted funds impose a burden of accounting.

71.     Plaintiff and the class require an accounting of the legal fees and costs paid for using Covered Trust assets to determine the amount improperly taken.

72.     Wells Fargo has declined to provide such an accounting upon plaintiff's request.

## COUNT VI

### Declaratory Judgment Regarding Wells Fargo's Right to Indemnification for Legal Fees and Costs Incurred in Defending the Litigation from the Covered Trusts

73.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

74.     A valid and justiciable controversy exists between plaintiff and Wells Fargo regarding Wells Fargo's right to indemnification from the Covered Trusts for legal fees and costs Wells Fargo incurred in defending the Litigation.  Plaintiff contends, and Wells Fargo denies, that Wells Fargo is not entitled to indemnification from the Covered Trusts for any loss, liability or expense associated with the Litigation because the Governing Agreements and New York law prohibit:

(a)    indemnification of first-party claims or those between indemnitor and indemnitee;

(b)    the use of Covered Trust funds for legal fees and costs incurred in defending against allegations of negligence, bad faith and willful misconduct;

(c)    using Covered Trust funds for the unreasonable legal fees and costs incurred in defending itself in the Litigation; and

(d)    obtaining advancement of Wells Fargo's legal fees and costs from the Covered Trusts incurred in relation to the Litigation.

75.    Plaintiff seeks a declaration that Wells Fargo is not permitted indemnification from the Covered Trusts for any loss, liability or expense associated with the Litigation, and that Wells Fargo is not entitled to draw against the Covered Trusts for the purpose of advancing its attorneys' fees and expenses associated with the Litigation.  The requested declaratory judgment will serve a useful purpose in clarifying and settling the legal issue regarding whether Wells Fargo is entitled to indemnity from the Covered Trusts against any loss, liability or expense associated with the Litigation.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.    Determining that this action is a proper class action, certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and appointing the undersigned as class counsel;

B.    Compelling Wells Fargo to provide an accounting of the legal fees and costs it has sought and/or received from the Covered Trusts in defending itself in the Litigation and this action;

C.     Providing declaratory relief in favor of plaintiff and the class to establish that Wells Fargo is prohibited from advancement and reimbursement of fees and costs incurred in relation to the Litigation and this action from the Covered Trusts;

D.     Issuing a preliminary and permanent injunction, enjoining the further advancement or indemnification of Wells Fargo from the Covered Trusts' assets for legal fees and costs incurred in the Litigation and this action;

E.     Awarding damages and/or equitable relief in favor of plaintiff, the class and the Covered Trusts against Wells Fargo for breaches of its contractual and common law duties alleged in the Litigation and this action, including interest thereon;

F.     Disgorging any benefits or profits received as a result of Wells Fargo's breach of its duty of loyalty to avoid unjust enrichment;

G.     Awarding punitive damages to plaintiff, the class and the Covered Trusts against Wells Fargo related to the claims of conversion and the breach of trust;

H.     Awarding plaintiff, the class and the Covered Trusts their reasonable costs and expenses incurred in this action, including counsel and expert fees; and

I.     Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED: September 1, 2017                    ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                            SAMUEL H. RUDMAN


                                            _____
                                            */s/ Samuel H. Rudman*
                                            SAMUEL H. RUDMAN

- 20 -

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
HILLARY B. STAKEM
J. MARCO JANOSKI GRAY
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff